IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARK NERI,<br><br>            **Plaintiff**,<br>    v.<br><br>THE COUNTY OF STANISLAUS DISTRICT ATTORNEY'S OFFICE, COUNTY OF STANISLAUS, and DOES 1 through 50, inclusive,<br><br>            **Defendants.** | 1:10-CV-823  AWI GSA<br><br>**ORDER ON DEFENDANTS' MOTION TO DISMISS**<br><br>(Doc. No. 6) |

This case arises from the placement of Plaintiff Mark Neri ("Neri") on a so-called "Brady List" by Defendant Stanislaus County District Attorney's Office (the "DAO"). Neri lost his job as a police officer with the City of Ceres as a result of his placement on the Brady List.[1] Neri has filed this lawsuit against the DAO and the County of Stanislaus ("the County"). Neri brings claims under the California Constitution and under 42 U.S.C. § 1983 for violation of the Fourteenth Amendment; he also requests injunctive and declaratory relief. Defendants move to dismiss. For the reasons that follow, the Court will grant Defendants' motion.

---

[1] The complaint explains that, typically a prosecutor will notify a defense counsel when a law enforcement official involved in the case has sustained a record for knowingly lying in an official capacity. See Complaint ¶ 9. The list of officers who have been identified as knowingly lying is commonly known as a Brady List. See id. The Brady List is meant to fulfill due process obligations as described in *Brady v. Maryland*, 373 U.S. 83 (1963). Pertinent exculpatory material concerning the officer is turned over to the defense. See id. Such "Brady Material" is supposed to consist of exculpatory or impeachment information. See id. Because the veracity of an officer becomes a question, "being Brady-listed has a significant negative effect upon a law-enforcement officer's career." Walters v. County of Maricopa, 2006 U.S. Dist. LEXIS 60272, *13-*14 (D. Ariz. Aug. 22, 2006).

**BACKGROUND**

From the complaint, Neri was hired by the City of Ceres ("Ceres") police department in 1995.  He was promoted to the rank of detective in 2006.  On April 28, 2008, the DAO informed the Ceres Police Chief that Neri's name was going to be placed on a Brady List and that several hundred pages of documents pertaining to Neri, i.e. "Brady Material," would be disclosed to criminal defendants.  The DAO and County do not appear to have any objective criteria for why or how the DAO selects officers for investigation or placement on the Brady List, or what type of material is considered Brady Material.

The DAO had conducted an apparent impromptu investigation of Neri.  The investigation included reviews of a former employer's (also a police agency) department records and the Ceres police department personnel files.  No one informed Neri that the DAO had obtained his employment records.  Neri was not given the opportunity to object to the dissemination of personnel and private documents before the DAO disclosed the information.  Included in the disseminated documents was information regarding an allegation that was neither sustained nor acted upon by Neri's former employer or the DAO.  Despite the allegation's unsustained and irrelevant nature, the DAO deemed the allegation Brady Material.

Ceres sent a letter to the DAO requesting that the DAO refrain from disclosing Neri's personnel and personal information.  Nevertheless, the DAO began informing criminal defense lawyers that Brady Material existed as to Neri.  The DAO sent a form letter to defense counsels advising about the Brady Material and included a CD with the letter.  The CD contained approximately 500 pages of documentation that the DAO deemed to be constitutionally relevant. The CD did not properly redact personal information belonging to Neri.  A majority of the documents can be summarized as the history of a custody dispute between Neri and his ex-wife. Also included is an incident regarding a dispute with a daycare provider over who was to pick up Neri's son.  Also included is an allegation that Neri had "keyed" his ex-girlfriend's car. However, the "keying" incident was investigated by the Ceres police department and determined to be unfounded.  Also included is an allegation of domestic violence by Neri against his future wife.  The complainant and a witness initially reported mistruths, but later reported "the true

chain of events." The prosecutor handling the case for the DAO was unable to prosecute Neri after the witness and complainant recanted. Ceres did not discipline Neri regarding the domestic violence allegation. Neri alleges that he was selected for investigation, and was placed on the Brady List, as part of a grudge and in retaliation for the DAO being unable to convict Neri of domestic violence.

After Ceres received the Brady List letter, Ceres officials met with the DAO. Ceres supported Neri and challenged his placement on the Brady List. The DAO made it clear that it would not remove Neri's name. In May 2008, the City placed Neri on administrative leave and continued to try to negotiate with the DAO. The DAO later informed Ceres that it would not allow Neri to testify for the prosecution in any of their cases without independent corroboration.

On February 21, 2009, Ceres terminated Neri. Ceres stated that as a result of Neri's placement on the Brady List, he had automatically violated rules and policy. Further, since Neri's job requires that he give testimony in legal proceedings, he could not fulfill his job requirements. Neri appealed the February 2009 decision. Although the appeals board found Neri credible, the board upheld the termination in July 2009. The sole reason for the termination was Neri's placement on the Brady List. The board stated that they had no control over the Brady List and that placement of Neri on the Brady List violated several city policies. Placement on the Brady List has prevented Neri from pursuing his trade as a police officer.

In September 2009, Neri testified before a jury in the "*Carrillo* case." Neri had been the lead detective in the case. The DAO disclosed Neri's Brady Material to defense counsel. During two days of testimony, no party brought up any of the Brady Material regarding Neri. The defendant in the "*Carrillo* case" was convicted of two counts of homicide. Despite calling Neri and using his testimony in the *"Carrillo* case," the DAO has kept Neri's name on the Brady List.

On May 11, 2010, Neri filed suit against the County and the DAO. Under his 42 U.S.C. § 1983 claim, Neri contends that Defendants have a policy or practice of placing officers on a Brady List without the aide of established and objective criteria, and that his 14th Amendment right to pursue a profession has been violated by placing his name on the Brady List and disclosing personal information.

**RULE 12(b)(6) FRAMEWORK**

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003). As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully. Where a

> complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50. "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). If a Rule 12(b)(6) motion to dismiss is granted, leave to amend need not be granted when amendment would be futile. Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

## DEFENDANT'S MOTION

**I.      Federal Claims**

*Defendants' Argument*

Defendants argue *inter alia* that all of Neri's federal claims are barred by either Eleventh Amendment immunity or absolute prosecutorial immunity. Defendants argue that both the Ninth Circuit and the California Supreme Court have held that district attorneys represent the state when preparing to prosecute and when prosecuting crimes. That is, district attorneys act as arms of the state when they act in their prosecutorial roles and therefore are entitled to Eleventh Amendment immunity. Because evaluation of potential prosecution witnesses, as well as disclosing Brady Material are part of the district attorney's role as a prosecutor, Eleventh Amendment immunity applies. Similarly, the decision to place Neri on the Brady List involves an assessment of credibility, which is part of the prosecutor's judicial function. Prosecutors have absolute immunity for actions that fall under a prosecutor's judicial function.

*Plaintiff's Opposition*

Neri argues that neither Eleventh Amendment immunity nor absolute prosecutorial

immunity will apply to a district attorney's administrative or investigative conduct. Actions not directly related to the judicial process receive at most qualified immunity. Here, the DAO acted in an administrative capacity when it obtained Neri's employment records, compiled personal information about Neri, and then placed him on the Brady List. Placing Neri's name on the Brady List was not done in conjunction with a specific case. Placing Neri's name on the Brady List is merely ministerial and, unlike a witness evaluation, does not involve a decision whether to prosecute. Neri also argues that, even if there is absolute immunity, his claims for prospective relief may continue. Further, if dismissal is granted, Neri requests the opportunity to amend.

*Legal Standard*

States, governmental entities that are considered "arms of the state," and state officials who are sued in their official capacities are entitled to Eleventh Amendment immunity and are not considered "persons" for purposes of 42 U.S.C. § 1983. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 70-71 (1989); Flint v. Dennison, 488 F.3d 816, 824-25 (9th Cir. 2006). "California [district attorneys] serve both state and county functions: They act as state officials, and so possess Eleventh Amendment immunity, when 'acting in [their] prosecutorial capacity.'" Del Campo v. Kennedy, 517 F.3d 1070, 1073 (9th Cir. 2008); see also Weiner v. San Diego County, 210 F.3d 1025, 1031 (9th Cir. 2000). Generally, district attorneys act in a prosecutorial capacity when they are "preparing to prosecute [or are] prosecuting criminal violations." Bishop Paiute Tribe v. County of Inyo, 291 F.3d 549, 565 (9th Cir. 2002)[2] (quoting Pitts v. County of Kern, 17 Cal.4th 340, 362 (1998)). "District attorneys performing investigatory and other functions, however, are officers of the county." Ceballos v. Garcetti, 361 F.3d 1168, 1183 (9th Cir. 2004).[3]

Similarly, district attorneys are entitled to absolute prosecutorial immunity for conduct that is "intimately associated with the judicial phase of the criminal process." Van de Kamp v. Goldstein, 129 S.Ct. 855, 860 (2009); Botello v. Gammick, 413 F.3d 971, 975 (9th Cir. 2005).

---

[2] Vacated and remanded on other grounds, 538 U.S. 701 (2003).

[3] Reversed and remanded on other grounds, 547 U.S. 410 (2006).

The guiding principle is that "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the state, are entitled to the protections of absolute immunity." Buckley v. Fitsimmons, 509 U.S. 259, 274 (1993). However, a "prosecutor's administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings are not entitled to absolute immunity." Id. "[W]hen prosecutors perform administrative or investigative functions, only qualified immunity is available." Botello, 413 F.3d at 976. "To determine whether an action is judicial, investigative, or administrative, [courts] look to the nature of the function performed, not the identity of the actor who performed it." Kalina v. Fletcher, 522 U.S. 118, 127 (1997); Cousins v. Lockyer, 568 F.3d 1063, 1068 (9th Cir. 2009). Conduct is not "investigative" if the conduct does not involve "the evidence gathering and witness interviewing functions 'normally performed by a detective or police officer.'" Cousins, 568 F.3d at 1068 (quoting Buckley, 509 U.S. at 273). When arguably administrative "acts are 'directly connected with the conduct of a trial' and 'necessarily require legal knowledge and the exercise of related discretion,'" absolute immunity is appropriate. Davis v. Tarrant County, 565 F.3d 214, 226 (5th Cir. 2009) (quoting Van de Kamp, 129 S.Ct. at 858-64); see also Warney v. Monroe County, 587 F.3d 113, 124-25 (2d Cir. 2009); Cousins, 568 F.3d at 1069. When it applies, absolute immunity bars a civil lawsuit, "even if it leaves the genuinely wronged defendant without civil redress against a prosecutor whose malicious or dishonest actions deprives him of liberty." Imbler v. Pachtman, 424 U.S. 409, 431 (1976).

"[T]he issue whether an officer is acting as a prosecutor for purposes of determining absolute or qualified immunity in § 1983 actions involves the same considerations as the issue whether he is acting as a prosecutor for purposes of determining sovereign immunity under the Eleventh Amendment." Ceballos, 361 F.3d at 1183 n.11. Accordingly, § 1983 absolute prosecutorial immunity cases may guide Eleventh Amendment immunity cases, and vice versa. See id.; Ambrose v. Coffey, 696 F.Supp.2d 1119, 1137 (E.D. Cal. 2010).

*Discussion*

Neri essentially contends that no immunity is available because the DAO did not act in a

7

judicial capacity, but instead acted as an administrator when it placed his name on the Brady List and disclosed information.[4] The Court cannot agree.

First, to this Court's knowledge, the only case to address Brady Lists has reached a conclusion that is contrary to Neri: "The decision to place [the officer] on the Brady list and to communicate that decision, however, were acts for which these Defendants [, two county attorneys and the county,] have absolute immunity." Walters v. County of Maricopa, 2006 U.S. Dist. LEXIS 60272, *27-*28 (D. Ariz. Aug. 22, 2006).

Second, the evaluation of a witness's credibility is a task that each prosecutor must perform, not only in developing a trial strategy, but also in determining whether to file charges. See Roe v. City & County of San Francisco, 109 F.3d 578, 583-84 (9th Cir. 1997). In a similar case to Neri's, the Ninth Circuit gave prosecutors absolute immunity for failing to prosecute cases that were initiated by a particular state police officer. See id. at 580. Officer Roe claimed that he was retaliated against because he sent a legal memorandum to a district attorney (Lee) on an issue where the two had a differing opinion. See id. at 582. A separate district attorney (Farrell) believed that Roe had lied on the witness stand because his trial testimony varied from pre-trial testimony. See id. at 581. Various memos were exchanged between the district attorney, Roe, and Roe's superiors. See id. at 581-82. Included in the exchanges was a statement that the district attorney would have to disclose to defense counsel a memo that had concluded that Roe had lied under oath. See id. at 582. The district attorney then implemented a policy that none of Roe's cases would be filed without corroborating evidence. See id. When further meetings failed to change the district attorney's policy, Roe was transferred to Oakland because the restrictions imposed by the district attorney prevented Roe from fully performing his duties in San Francisco. See id. The Ninth Circuit found that the district attorneys were entitled to absolute prosecutorial immunity because the decision to not prosecute, as well as the evaluation

---

[4] Neri's arguments against immunity for the DAO focus on the nature of the actions performed by the individual district attorneys. Neri does not argue that the DAO has a status that is different from the individual district attorneys within the office. In light of the arguments of the parties in this motion, the Court will assume that the DAO shares the same status as the individual district attorneys. As such, whether the DAO is entitled to immunity depends on whether the individual district attorneys would be entitled to immunity.

8

of a witness's credibility, were decisions that are intimately associated with the judicial phase of the criminal process. See id. at 583-84. With respect to a prosecutorial evaluation that a witness is not credible, the Ninth Circuit explained:

> Whether their assessment is accurate or not is immaterial. This kind of witness evaluation falls entirely within a prosecutor's judicial function . . . . Just as a prosecutor's professional evaluation of the evidence assembled by the police is entitled to absolute immunity, a prosecutor's professional evaluation of a witness is entitled to absolute immunity, even if that judgment is harsh, unfair, or clouded by personal animus . . . .

Id. at 584.

In the case at bar, the DOA has determined that: Brady Material exists as to Neri, disclosures must be made in future cases, and that Neri is not a credible witness. The same determinations were made in *Roe*. Under *Roe*, the DAO's evaluation of, conclusions about, and disclosures regarding Neri all would be prosecutorial conduct that is intimately associated with the criminal judicial process and thus, would be immune. See id. at 583-84.

Neri emphasizes that the Brady List decision was made outside of a prosecution. The significance of this point is not clear. Once information concerning a witness or potential witness comes into the hands of a prosecutor, the prosecutor must evaluate how that evidence affects the witness or potential witness's credibility, including whether disclosure of the evidence may be necessary either now or at some later point. Such evaluations and considerations may determine whether a case is even filed. The duty to evaluate remains irrespective of whether the information/evidence is obtained outside an active prosecution. Further, in *Roe*, although the issue of credibility arose from testimonial conduct in a particular case, the relevant decisions were made after the San Francisco prosecutor had dismissed the particular case. The ultimate decision that Roe was not credible, the policy that future disclosures would need to be made, and the policy that corroborating evidence would be necessary all occurred outside the context of any on-going prosecution.[5] See id. at 581-84.

---

[5] Neri alleges that he was singled out for investigation and placed on the Brady List as a result of a grudge by the DAO for being unable to prosecute the domestic violence charge against him. See Complaint at ¶ 11. Therefore, like *Roe*, at least some of the Brady Material in this case appears to be related to an unsuccessful prosecution. Cf. Roe, 109 F.3d at 581-82, 584 (noting *inter alia* that judgment about a witness is entitled to absolute immunity even if the judgment is clouded by personal animus).

Third, numerous courts have recognized that the decision whether to disclose Brady Material is a prosecutorial or judicial act and therefore immune. E.g. Imbler, 424 U.S. at 431-32 n.34 (explaining that the "deliberate withholding of exculpatory information" is included within the "legitimate exercise of prosecutorial discretion"); Warney, 587 F.3d at 125 (stating that "if the prosecutors had tested all the evidence, and then sat on the exculpatory results for at least 72 days, they may well have violated *Brady v. Maryland*, 373 U.S. 83 (1963); but they would be absolutely immune from personal liability"); Jones v. Shankland, 800 F.2d 77, 80 (6th Cir. 1986) (noting that a prosecutor's "non-disclosure of exculpatory information [is] certainly entitled to absolute immunity"); Prince v. Wallace, 568 F.2d 1176, 1178-79 (5th Cir. 1978) (extending absolute prosecutorial immunity to "initiating and pursuing a criminal prosecution and in presenting the state's case . . . even where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts"). The Ninth Circuit has held that a "prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady v. Maryland*, 373 U.S. 83, 87 (1963). It is, nonetheless, an exercise of the prosecutorial function and entitles the prosecutor to absolute immunity from a civil suit for damages." Broam v. Bogan, 320 F.3d 1023, 1030 (9th Cir. 2003). The Ninth Circuit also has noted that the duty to disclose and preserve evidence arises from a prosecutor's "role as an officer of the court charged to do justice. *Brady v. Maryland*, 373 U.S. 83, 87 (1963). An act or an omission concerning such a duty cannot be construed as only administrative or investigative; it too is necessarily related to [the district attorney's] preparation to prosecute." Ybarra v. Reno Thunderbird Mobile Home Village, 723 F.2d 675, 679 (9th Cir. 1984). For purposes of absolute immunity, the Court sees no distinction between a district attorney disclosing Brady Material and a district attorney failing to disclose Brady Material. Both decisions stem from the district attorney's obligations as a prosecutor and require a prosecutor's individual evaluation of evidence under *Brady v. Maryland*. See id. Such decisions are not administrative. See id.

Finally, assuming that placing Neri's name on a Brady List is a type of administrative act, or the failure to maintain objective criteria for placing a name on a Brady List is a type of

administrative act, they are not the type of purely administrative decisions for which only qualified immunity is available. In *Van de Kamp*, the Supreme Court reversed a Ninth Circuit opinion that had denied absolute prosecutorial immunity. See Van de Kamp, 129 S.Ct. at 864-65. The Ninth Circuit had found that the conduct at issue was administrative. The specific conduct was two-fold: (1) a failure to adequately train attorneys about their obligations to disclose impeachment evidence as required by *Giglio v. United States*, 405 U.S. 150 (1972); and (2) a failure to maintain a system for attorneys handling criminal cases to access information pertaining to the benefits provided to jailhouse informants and other impeachment information. Van de Kamp, 129 S.Ct. at 861. With respect to training, the Supreme Court explained:

> We agree with the Court of Appeals that the office's general methods of supervision and training are at issue here, but we do not agree that that difference is critical for present purposes. That difference does not preclude an intimate connection between prosecutorial activity and the trial process. The management tasks at issue, insofar as they are relevant, concern how and when to make impeachment information available at a trial. They are thereby directly connected with the prosecutor's basic trial advocacy duties. And, in terms of *Imbler*'s functional concerns, a suit charging that a supervisor made a mistake directly related to a particular trial, on the one hand, and a suit charging that a supervisor trained and supervised inadequately, on the other, would seem very much alike.

Id. at 862-63. Tellingly, the Supreme Court also stated, "one cannot easily distinguish, for immunity purposes, between claims based upon training or supervisory failures related to *Giglio* and similar claims related to other constitutional matters (obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), for example)." Id. at 863. With respect to the failure to maintain a particular system, the Supreme Court explained:

> The critical element of any information system is the information it contains. Deciding what to include and what not to include in an information system is little different from making similar decisions in respect to training. Again, determining the criteria for inclusion or exclusion requires knowledge of the law.
>
> Moreover, the absence of an information system is relevant here if, and only if, a proper system would have included information about the informant Fink. Thus, were this claim allowed, a court would have to review the office's legal judgments, not simply about whether to have an information system but also about what kind of system is appropriate, and whether an appropriate system would have included *Giglio*-related information about one particular kind of trial informant. Such decisions--whether made prior to or during a particular trial--are "intimately associated with the judicial phase of the criminal process." And, for the reasons set out above, all *Imbler*'s functional considerations (and the anomalies we mentioned earlier, *supra*, at 172 L. Ed. 2d at 716-717) apply here as well.

Id. at 864.

Here, Neri is attempting to do what the plaintiff in *Van de Kamp* unsuccessfully tried. Neri complains about disclosure, but "the disclosure of evidence to opposing counsel is an advocacy function." Warney, 587 F.3d at 125. Neri also complains about the system for determining Brady Lists, but the decision of how one is placed on a Brady List, what materials are disclosed as Brady Materials, and whether to have certain express criteria for a Brady List "require[] knowledge of the law," would require "review of the [DAO's] legal judgments," and would be "intimately associated with the judicial phase of a criminal prosecution." Van de Kamp, 129 S.Ct. at 863-64. Under *Van de Kamp*, such conduct receives absolute immunity.

Placing Neri's name on a Brady List, disclosing what the district attorneys considered to be Brady Material, and not utilizing objective criteria for Brady List determinations is conduct that requires witness evaluation, involves obligations imposed pursuant to the Supreme Court (*Brady v. Maryland*), requires the application of legal knowledge, and is associated with the judicial phase of the criminal process. See Van de Kamp, 129 S.Ct. at 863-64; Warney, 587 F.3d at 124-25; Roe, 109 F.3d at 583-84; Ybarra, 723 F.2d at 679; Walters, 2006 U.S. Dist. LEXIS 60272 at *27-*28. As such, the acts of placing Neri's name on a Brady List and disclosing Brady Materials were acts done in a prosecutorial capacity; thus, the acts were done by those who were the agents of the State of California. See Del Campo, 517 F.3d at 1073; Weiner, 210 F.3d at 1031; Johnson v. Santa Clara County, 2009 U.S. Dist. LEXIS 120898, *11-*14 (N.D. Cal. Dec. 29, 2009); Souza v. County of Merced, 2007 U.S. Dist. LEXIS 45256, *15-*18 (E.D. Cal. June 11, 2007); cf. Pitts, 17 Cal.4th at 356-62. The DAO, and the district attorneys who actually performed the conduct, are entitled to Eleventh Amendment immunity. See id.; see also Footnote 4, *supra*. Further, because the conduct at issue was on behalf of the State and not the County, no viable claims are alleged against the County. See Weiner, 210 F.3d at 1031; Johnson, 2009 U.S. Dist. LEXIS 120898 at *11-*14; Souza, 2007 U.S. Dist. LEXIS 45256 at *17-*18.

Relying on *Fry v. Melaragno*, 939 F.2d 832, 839 (9th Cir. 1991), Neri argues that if the Court is inclined to find immunity, his claims for declaratory and injunctive relief nevertheless survive. Defendants do not address this issue in their reply. However, *Fry* did not involve

Eleventh Amendment immunity, it involved qualified immunity and absolute prosecutorial immunity. See id. at 836-38. "The Eleventh Amendment bars suits against the State or its agencies for all types of relief, absent unequivocal consent by the state." Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999) (citing Pennhurst v. Halderman, 465 U.S. 89, 100 (1984)); see also Savage v. Glendale Union High Sch. Dist. No. 205, 343 F.3d 1036, 1040 (9th Cir. 2003) ("It is well established that agencies of the state are immune under the Eleventh Amendment from private damages or suits for injunctive relief brought in federal court."). Since placing Neri's name on a Brady List and disclosing Brady Materials was conduct pursuant to a prosecutorial function, that conduct was on behalf of the State, not the County. See Johnson, 2009 U.S. Dist. LEXIS 120898 at *13-*14; Souza, 2007 U.S. Dist. LEXIS 45256 at *17-*18. Because the conduct at issue was done on behalf of the state, the Eleventh Amendment bars Neri's federal claim for injunctive and declaratory relief against the DAO.[6] See Savage, 343 F.3d at 1040; Romano, 169 F.3d at 1185; Johnson, 2009 U.S. Dist. LEXIS 120898 at *11-*14; Souza, 2007 U.S. Dist. LEXIS 45256 at *15-*18; see also Footnote 4, *supra*. Relatedly, because the "Brady List conduct" at issue is not attributable to the County, no declaratory or injunctive relief is appropriate as to the County. See Weiner, 210 F.3d at 1031; Johnson, 2009 U.S. Dist. LEXIS 120898 at *11-*14; Souza, 2007 U.S. Dist. LEXIS 45256 at *15-*18.

Because the DAO is immune under the Eleventh Amendment, and the conduct at issue is not attributable to the County, amendment would be futile. Dismissal with prejudice of Neri's 42 U.S.C. § 1983 claims against the County and the DAO is appropriate.[7] See Johnson, 2009

---

[6] The Court realizes that prospective relief may be available against state officials sued in their official capacities. See Ex parte Young, 209 U.S. 123, 159-60 (1908); Porter v. Jones, 319 F.3d 483, 491 (9th Cir. 2003). However, there are no state officials in this case, and no party addresses *Ex parte Young*. Further, it appears that some of the prospective relief requested may be unavailable due to separation of powers concerns. See Roe, 109 F.3d at 586; Harrington v. Almy, 977 F.2d 37 (1st Cir. 1992). Nevertheless, because no party has addressed *Ex parte Young* or any potentially related issues, e.g. *Harrington*, the Court expresses no opinion on the matter. It is enough for this motion that there are no state officials sued in their official capacities.

[7] Neri relies heavily on Hoffman v. Kelz, 443 F.Supp.2d 1007 (W.D. Wisc. 2006). *Hoffman* involved a district attorney who made numerous public statements that disparaged a chief of police's honesty, competency, and reliability. See id. at 1010. Those statements led the chief's employer to decline to renew his employment contract. See id. In the course of denying a motion to dismiss based in part on prosecutorial immunity, the *Hoffman* court observed: "This indicates that [the district attorney] made the statements in the course of advising the village board on a personal matter." Id. at 1012. Thus, *Hoffman* did not involve the placement of a name on a *Brady* list, nor did it involve the disclosure to defense counsel of information that the district attorney deemed to be *Brady* material.

U.S. Dist. LEXIS 120898 at *11-*14; Souza, 2007 U.S. Dist. LEXIS 45256 at *15-*18.

## II.     State Law Claims

The Court has supplemental jurisdiction over Neri's state law claims. Under 28 U.S.C. § 1367(c)(3), a district court may decline to exercise jurisdiction over supplemental state law claims if "the district court has dismissed all claims over which it has original jurisdiction." The general rule is "when federal claims are dismissed before trial . . . pendent state claims should also be dismissed." Religious Tech. Ctr v. Wollersheim, 971 F.2d 364, 367-68 (9th Cir. 1992); Scholar v. Pacific Bell, 963 F.2d 264, 268 n.4 (9th Cir. 1992); Schultz v. Sundberg, 759 F.2d 714, 718 (9th Cir. 1985). Since the Court has dismissed with prejudice Neri's federal claims, the Court will decline to exercise supplemental jurisdiction over the state law claims. See id.

## CONCLUSION

Neri's federal claims are based on his placement on a Brady List, the disclosure of personal information that was deemed to be Brady Material, and the failure to maintain objective criteria for placement on a Brady List. As discussed above, such conduct is done pursuant to the prosecutorial capacity of the district attorney. Therefore, the conduct is considered to be that of the State, not the County, and Eleventh Amendment immunity is applicable. Since Eleventh Amendment immunity would make amendment of the complaint futile as to the County and DAO, dismissal of Neri's federal claims without leave to amend is appropriate. Relatedly, because the conduct at issue is attributable to the State, there are no federal claims against the County.

As for the state law claims, because the Court has dismissed the federal claims in this case, the Court declines to exercise supplemental jurisdiction over Neri's state law causes of action.

---

Instead, *Hoffman* involved numerous, negative, public statements that appeared to be related to a "personal matter." The Court does not find *Hoffman* persuasive in this case.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss is GRANTED in part in that Plaintiff's federal claims against Defendants Stanislaus County and Stanislaus County District Attorney's Office are DISMISSED with prejudice;
2. The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims;
3. Plaintiff may re-file his state law claims in state court; and
4. The Clerk shall CLOSE this case.

IT IS SO ORDERED.

Dated:   September 8, 2010                                          _____
                                                                    CHIEF UNITED STATES DISTRICT JUDGE